LOWE GOODE, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Among other things, the term ex post facto law includes every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence in order to convict the offender.

2. It is the general rule, in construing statutes, that construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole, and a construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which will give it effect; yet, however important it is to give significance and effect to every word, clause and sentence in a statute, less regard is to be paid to the words used than the policy which dictates the act.

3. Section 3 of Chapter 4930 of the Laws of 1901, which provides that "in the trial of violations of Sections 1 and 2 of this act, it shall not be necessary for the prosecution to prove that the defendant had any interest in the money received by a defendant for whiskey or liquor delivered by him, but proof of the delivery of liquor by a defendant and the receipt of money therefor by him shall be sufficient prima facie evidence of the ownership of said liquor by a defendant," has the effect of modifying the rule of evidence enunciated in Anderson v. State, 32 Fla. 242, 13 South. Rep. 435, by making proof of the delivery of whiskey to a person by a defendant, and the receipt of money therefor by him, prima facie evidence of the ownership of said whiskey by the defendant and thereby casting upon him the burden of rebutting the legal presumption.

4. In a prosecution for violation of the local option law the crime may be proved by showing a systematic course of trade by the defendant as well as by showing a single act.

5. Evidence of circumstances tending to connect the accused with the commission of the alleged crime, even though

inconclusive, is properly admitted, and this is especially true in a prosecution for violation of the local option law when such evidence tends to throw light upon the real transaction. The admission of such evidence rests largely within the judicial discretion of the trial judge, and an appellate court should not disturb his ruling thereon, unless an abuse of the judicial discretion is clearly made to appear.

6. Evidence examined and found sufficient to support the verdict.

This case was decided by Division A.

Writ of error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the Court.

*Daniel Campbell & Son*, for Plaintiff in Error.

*W. H. Ellis*, Attorney-General, and *J. W. Kehoe*, State Attorney, for the State.

SHACKLEFORD, C. J. At the fall term, 1903, of the Circuit Court for Walton county, the plaintiff in error, Lowe Goode, (hereinafter referred to as the defendant), was indicted for carrying on the business of a liquor dealer in violation of the local option law, was tried and convicted at the fall term of said court for the year 1904, and seeks relief here by writ of error returnable to the present term of this court.

Three errors are assigned, the first and third being based upon the admission of the testimony of C. A. Stanley, a witness for the State, as to the alleged sales of liquor made by the defendant more than two years prior

to the finding of the indictment, and the second being based upon the denial of the defendant's motion for a new trial. It seems advisable to discuss these three assignments together.

At the time the crime is alleged to have been committed, Chapter 4930 of the Laws of 1901, was in full force and effect, and the indictment was based thereon. Section 4 of said law reads as follows:

"Sec. 4. In the trial of violations of Sections 1 and 2 of this act, proof of a sale of a single quantity of liquor by a defendant, if proved by the testimony of two witnesses, shall be deemed sufficient to convict, and the judge presiding at the trial of the case shall so charge the jury."

This section was expressly repealed by Chapter 5187 of the Laws of 1903, which became a law prior to the finding of the indictment against the defendant, and yet section 4 of Chapter 4930 of the Laws of 1901, was in force and effect, so far as the defendant was concerned, and he was entitled to whatever benefit, privilege or right was granted thereby. To hold otherwise would make Chapter 5187 of the Laws of 1903 an *ex post facto* law, and, therefore, violative of section 17 of the Declaration of Rights in the Constitution of 1885, as well as of Clause 3 of section 8 of Article 1 of the Federal Constitution. In the leading case of Calder v. Bull, 3 U. S. (3 Dall.) 386, 1 L. Ed. 648, it was held, among other things, that the term *ex post facto* law includes "Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence in order to convict the offender." Hopt v. People of Utah, 110 U. S. 574, 28 Law Ed. 262, 4 Sup. Ct. Rep. 202; Hart v. State, 40 Ala. 32, S. C. 88 Amer. Dec. 752; 3 Words &

Phrases Judicially Construed, 2528, where numerous authorities are cited.

Turning now to the testimony, as the same is set forth in the bill of exceptions, we find that the State produced three witnesses, N. D. McLean, C. A. Stanley and William Anderson, and that the defendant offered no testimony.

It was admitted by the defendant in open court that the county of Walton was a local option county and that the local option provisions prohibiting the sale of liquor therein were in force at the time of the trial and had continuously been so for a period of more than two years prior to the finding of the indictment.

N. D. McLean testified as follows: "My name is Neal D. McLean, I reside at Freeport, Florida, in Walton county; I am acquainted with the defendant, Lowe Goode, that is him (Pointing the defendant out in court). I got a bottle of whiskey from the defendant, Lowe Goode, along last year sometime. I got the whiskey from Goode at his boat, in Freeport, Florida, Walton county, about a year ago, and I paid him half a dollar for it. I went to Lowe Goode and told him I wanted some whiskey, he said alright; he went down in the hole of his boat and brought up a bottle and handed it to me. I handed him a dollar, he took the money and made the change, laying half a dollar on the rail of the boat. I took the whiskey and the half dollar and went back up town. Lowe Goode took the dollar and kept it. Mr. Crawford had said to me that he would like to have some whiskey; I told him if he would furnish the money I would get the whiskey; he gave me the dollar, I went down there to Goode's boat, bought and paid for the whiskey as stated and went back and gave Mr. Crawford the half dollar and he and I drank the whiskey. I have got whiskey from Goode myself, at other times, but I always gave him orders for it except the

time before stated. I would give him a verbal order to bring me whiskey whenever he came; sometimes I gave him the money when I gave the order and sometimes I gave him the money when he brought the whiskey to me and soetimes I took the whiskey and paid Goode for it after I had drank it up. I would send these verbal orders to Pensacola, would not tell him any particular person to get the whiskey from, but only told him to bring me some whiskey from Pensacola when he came back. Goode was running a sail boat between Freeport and Pensacola and usually made the trip every week.

Cross examination.

I don't know whether Mr. Crawford had ordered any whiskey from Goode or not; he did'nt tell me whether he had ordered it or not, but simply said he would like to have some and I told him if he would furnish the money that I would get the whiskey. He did furnish the money and I got the whiskey from Goode as I have just stated."

C. A. Stanley testified as follows: "My name is C. A. Stanley, I reside at Freeport, Florida, Walton county; I know the defendant Lowe Goode; some time ago, some two or three years ago, I sent for a bottle of whiskey by Goode and he brought it to me from Pensacola. But the defendant by his attorney, then and there objected to said testimony and moved to strike the same, because it did not show that the whiskey had been brought to him within two years prior to the indictment, but the said judge did then and there deliver his opinion and decide that said objection should be overruled and directed the jury that they could not find the defendant guilty under the present indictment upon the proof of selling liquor if such sale was not shown to have been made within two years before the finding of the indictment upon which the defendant

4 S. C.

was on trial, and that any sale more than two years be-
fore such date, by Goode, could only be considered by
them as throwing light upon the transaction, and not as
a substantive offense, to which decision, overruling the
objection of the defendant the defendant then and there
excepted. The whiskey the said Goode brought me from
Pensacola, I had ordered for sickness and it was not as
good whiskey as I had ordered or as I had wished and I
took the whiskey back to Goode and told him that I did
not want it because it was not good whiskey. I had given
Goode money to buy the whiskey at the time I gave him
the order. When I carried the whiskey back to him to be
returned, he stated to me that he had a bottle of better
whiskey on board that he had bought for another party,
but that the other party was not there and had not called
for the whiskey and that he would give me the other bottle
of whiskey in exchange for the one he had brought me if I
would pay the difference in price, which he said was
thirty-five cents. I told him alright and gave him back
the bottle of whiskey that he had bought for me and took
the bottle of better whiskey and paid him thirty-five cents
in cash, the difference between the two bottles and I took
the good whiskey and carried it home. This was in Wal-
ton county, State of Florida, and was somewhere about
two or three years ago, I cant say exactly when. At other
times I had had Goode to bring me whiskey from Pensa-
cola upon verbal orders that I would give him; I would
not tell him where to get it but would just direct him to
bring me whiskey from Pensacola. Sometimes I gave him
the money when I gave the order; sometimes I gave him
the money when he delivered the whiskey and sometimes
I would take the whiskey and give him the money after-
wards; there is no barroom or other place in Freeport
where whiskey is publicly sold, and we generally order

our whiskey from Pensacola and have it brought up by the boats by freight."

William Anderson testified as follows: "My name is Bill Anderson or William Anderson. I know the defendant, Lowe Goode. I never bought any whiskey outright from Goode in Walton county, but I used to get whiskey and have gotten it several times within the last two years from him; the way I got it was this: Goode was running a boat between Freeport and Pensacola and he hauled wood and other things for me, and sometimes I was in his debt and sometimes he was in mine. I would tell Goode to bring me whiskey from Pensacola and he would bring it and kept an account of what he brought for me and I would settle with him for the whiskey when we had our settlements which would be usually once or twice a month; he would charge the whiskey up to me in the settlement we would have. Sometimes I would be in debt to him when he would bring the whiskey and sometimes he would be in my debt; but in settling for the wood and the freight we would settle for the whiskey and all at the same time. Goode had a standing verbal order from me to bring me whiskey from Pensacola; this is all that I know about Goode selling whiskey in Walton county. When he would bring me the whiskey from Pensacola he would charge it up to me in Walton county and our settlements were made in Walton county, Florida, and if I owed him here and if he owed me, he would pay me here in Walton county."

Section 3 of Chapter 4930 of the Laws of 1901, which was not amended or repealed by Chapter 5187 of the Laws of 1903, is as follows:

"Sec. 3. In the trial of violations of Sections 1 and 2 of this act, it shall not be necessary for the prosecution to prove that the defendant had any interest in the liquor

delivered or sold by him, or any interest in the money received by a defendant for whiskey or liquor delivered by him, but proof of the delivery of liquor by a defendant and the receipt of money therefor by him shall be sufficient prima facie evidence of the ownership of said liquor by a defendant."

This section is rather peculiarly worded, and it is a little difficult to determine the exact meaning thereof. If the word "sale" had been used instead of the word "ownership," it would have been perfectly plain. However, the Legislature evidently meant something by said section and it is our duty to ascertain that meaning if possible. It is the general rule, in construing statutes, "that construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which will give it effect." 26 Amer. & Eng. Ency. Law (2nd ed.) 618; Sams v. King, 18 Fla. 557; Hall v. State, 39 Fla. 637, text 674, 23 South. Rep. 119. Also as was said in Conklin & Smith v. Goldsmith, 5 Fla. 280, text 281, "However important it is to give significance and effect to every word, clause and sentence in a statute, yet less regard is to be paid to the words used than the policy which dictates the act." See 26 Amer. & Eng. Ency. of Law (2nd ed.) 597.

We are of the opinion that there must have been present to the Legislative mind, in enacting this statute, the decision made by this court in Anderson v. State, 32 Fla. 242, 13 South. Rep. 435, and the intention in the adoption of Section 3 was to modify the rule of evidence enunciated in said case by making proof of the delivery of whiskey to a person by the defendant and the receipt of money therefor by him *prima facie* evidence of the ownership of

said whiskey by the defendant and thereby casting upon him the burden of rebutting this legal presumption by proper proof, if he could do so. Undoubtedly the Legislature had the power to change this rule of evidence, if it saw fit so to do, and the construction we have placed upon this section in no wise conflicts with the rule laid down in ex-Parte E. W. Bailey, 39 Fla. 734, 23 South. Rep. 552, in regard to the construction of penal statutes. It seems to us that the testimony of Stanley established, at least *prima facie,* the fact of a sale of whiskey to him by the defendant, and we are clear that the testimony of Anderson made out *prima facie* sales of whiskey to him by the defendant. . It is true that the date of sale made by the defendant to Stanley is not fixed further than that it was "somewheres about two or three years ago." The indictment was found on the 12th day of October, 1903, while the trial, which resulted in the defendant's conviction, was not had until the 5th day of October, 1904, and it may well have been that the sale testified to by the witness took place within two years before the finding of the indictment. However, the date was not established, therefore, the testimony could not have been admitted for the purpose of proving a sale to witness by defendant within the statutory period, and the court so instructed the jury. Did the court commit error in admitting this testimony to be considered by the jury "as throwing light upon the transaction" and the good faith of the defendant? We recognize the difficulty of laying down any hard and fixed rule in admitting testimony upon the trial of a defendant of other crimes than that with which he stands charged and we know that the authorities are in irreconcilable conflict upon this question. See Wharton's Crim. Ev. (9th ed.) Sec. 48; Abbott's Trial Brief, Crim. Causes (2nd ed.) 514, 520; Underhill's Crim. Ev. Sec. 87 *et seq.* In the case

of People v. Molineux, 168 N. Y. 264, 61 N. E. Rep. 286, S. C. 62 L. R. A. 193, after stating the general rule concerning the admission of testimony of other crimes or offenses than that charged in the indictment, it is said that the exceptions to the rule cannot be stated with categorical precision but only in a broad and general way. We would also refer to the elaborate note to said case in 62 L. R. A., especially to pages 230, 290 and 325 and the numerous authorities cited therein. As to the admissibility of such testimony and the exceptions to the rule in liquor and local option cases the authorities are so hopelessly divided, it is said in 1 Wigmore's Evidence, Sec. 367 on page 444, that "Nothing short of a treatise on the law of intoxicating liquors could do justice to the subject," and he declines to discuss it. We are of the opinion that no error was committed in admitting this testimony, especially under the cautionary language used by the trial judge and his instructions to the jury for what purpose they could consider it. Wallace v. State, 41 Fla. 547, text 562-3, 26 South. Rep. 713, is in point. Also see Brass v. State, 45 Fla. 1, 34 South. Rep. 307, which was a local option case, holding that the crime "may be proved by showing a single act but it may also be proved by showing a systematic course of trade" by the defendant.

The only ground of the motion for a new trial which is argued here is as to the sufficiency of the evidence, therefore, that is the only ground we are called upon to consider. McNish v. State, 47 Fla. 69, 36 South. Rep. 176. The verdict as found by the jury was concurred in by the trial judge, who refused to disturb it. Would we be justified in so doing? We think not. In view of all the testimony which was submitted to the jury, it seems to us that the jury might well have reached the conclusion

which they did. The instructions of the court are not set out in the transcript, but, as no exceptions were taken thereto, defendant must have been satisfied that the law was stated correctly. We are also mindful of the fact that it is frequently difficult to secure and elicit testimony in cases like the one at bar. This is a matter of common knowledge. So far as the record discloses to us, the defendant has had a fair and impartial trial, and has had the benefit of every right guaranteed by the Constitution and by law.

The judgment must be affirmed, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., disqualified.