## UNITED STATES v. ANDERSON.

### (District Court, D. Oregon. July 24, 1911.)

1. INDIANS (§ 36*)—REGULATION—PURCHASING CATTLE FROM INDIANS—SCIENTER.

In a prosecution for purchasing cattle from an Indian in violation of Act July 4, 1884, c. 180, 23 Stat. 76, providing that all sales in violation of the act should be void, and the offending purchaser on conviction should be fined, etc., guilty knowledge was not an element of the offense, and hence an indictment was not objectionable for failure to charge that accused had knowledge that the cattle purchased had been previously purchased by the government and issued to the Indian.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 63, 65; Dec. Dig. § 36.*]

2. INDIANS (§ 36*)—CATTLE—PURCHASE FOR INDIANS—OWNERSHIP—WRONGFUL SALE.

Act July 4, 1884, c. 180, 23 Stat. 94, made an appropriation for the support and contingent expenses of the Indian Department, providing that the President might use any sum appropriated for the subsistence of the Indians and not absolutely necessary for that purpose for the purchase of cattle for the benefit of the Indians for whom the appropriation was made, and then declared that such cattle when issued to the Indians should not be sold except to a member of the tribe without the written consent of the Indian agent, and making a violation thereof an offense. Held, that cattle purchased with money so appropriated was property of the United States, and did not cease to be such because of their delivery

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the Indians for a particular purpose and with limited right of disposal, and that it was to protect such cattle only, and prevent the purchase thereof from the Indians without the consent of the government, that the criminal provision was inserted in the act.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 63, 65; Dec. Dig. § 36.*]

**3. INDIANS (§ 36*)—SALE OF CATTLE—OFFENSES.**

Act July 4, 1884, c. 180, 23 Stat. 94, making it an offense to purchase cattle from Indians without the consent of the Indian agent, did not apply to cattle bought with money paid for lands ceded by the Indians to the United States and which belonged to the Indians and not to the government.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 63, 65; Dec. Dig. § 36.*]

O. T. Anderson was indicted for purchasing cattle from an Indian in alleged violation of Act Cong. July 4, 1884, and he demurs. Sustained.

Walter H. Evans, for the Government.

Lionel R. Webster, for defendant.

BEAN, District Judge. An indictment was returned by the grand jury against the defendant for purchasing cattle from an Indian in alleged violation of the act of Congress of July 4, 1884, 23 Stat. 76, which provides "that where Indians are in possession or control of cattle or their increase, which have been purchased by the government, such cattle shall not be sold to any person not a member of the tribe to which the owners of the cattle belong, or to any citizen of the United States, whether intermarried with the Indians or not, except with the consent in writing of the agent of the tribe to which the owner or possessor of the cattle belongs. And all sales made in violation of this provision shall be void, and the offending purchaser on conviction thereof shall be fined not less than $500, and imprisoned not less than six months." A demurrer to the indictment has been interposed because (1) it is not stated therein that defendant knew at the time he bought the cattle that they had been purchased by the government, and (2) that the cattle which he is charged with having bought were not in fact purchased by the government within the meaning of the act of Congress quoted.

For the purpose of having the latter question decided at this stage of the case, the district attorney and the defendant's counsel have agreed that the following undisputed facts be considered as though set out in the indictment: In June, 1901, an agreement was entered into between an agent of the United States and the Indians belonging to the Klamath Agency by the terms of which the latter ceded to the government about 600,000 acres of land for the sum of $575,000, $25,000 of this amount to be paid in cash to be distributed among the Indians, $350,000 to be deposited with the Treasurer of the United States to the credit of the Indians, interest to be paid to them annually. The balance, after the payment of attorney fees, to be expended for the benefit of the Indians under the direction of the Secretary of

the Interior, upon request of the Indians through the agent, in the drainage or irrigation of their lands and the purchase of stock cattle for issue to them, and for such other purposes as might, in the discretion of the Secretary of the Interior, best promote their welfare. The agreement was ratified by Congress in June, 1906 (Act June 21, 1906, c. 3504, 34 St. at L. 367) the necessary appropriation made to carry it into effect, it being provided that of the sum so appropriated, "$350,000 shall be deposited in the treasury of the United States to the credit of said Indians, and the remainder shall be expended as provided in the third article of said agreement."

Acting under authority of this agreement and the act of Congress ratifying same, the Indian Department advertised in April, 1909, for 4,500 heifers to be delivered at the Klamath Agency, for issue to the Indians. Pursuant to this advertisement and in conformity therewith, and after receiving proper bids, the Commissioner of Indian Affairs, in May, 1909, purchased of William Hanley of Portland, Or., 4,000 heifers, which were delivered during the month of August, 1909, and paid for from the money appropriated to carry into effect the agreement referred to. After the cattle were delivered, they were branded with the government brand and issued to the various Indians entitled thereto, and each Indian, on receipt of his apportioned number, promptly branded them with his own individual brand. It is a part of these cattle that the defendant is charged with having purchased in violation of the act of 1884. Upon the facts thus agreed to, the demurrer will be considered.

[1] Knowledge by the purchaser of cattle from an Indian that such cattle had been previously purchased by the government and issued to the Indian is not made by law an ingredient of the offense denounced by the act of July 4, 1884, and the rule is that where a statute prohibits an act generally and is silent as to the intent, the pleader need not aver knowledge. U. S. v. Malone (C. C.) 9 Fed. 897. It is competent for the lawmaking power to declare acts criminal irrespective of the knowledge or motive of the doer, and where it has done so no judicial authority has power to require in the enforcement of the law such knowledge or motive to be shown beyond what is included in the doing of the prohibited act. The general rule is that where an offense is purely statutory, having no general relation to criminal law, it is sufficient in the indictment to charge the defendant with acts coming fully within the statutory description in the substantial words of the statute without any further expansion of the matter provided the indictment is sufficient to apprise the defendant with reasonable certainty of the nature of the accusation against him to the end that he may prepare his defense and plead the judgment as a bar to any subsequent proceeding for the same offense. U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819. Of course one must know that he commits an act which the statute denounces before he can be guilty of a crime, thus the mailing of a letter without knowledge that it contains obscene matter is held to be no offense. U. S. v. Slenker, (D. C.) 32 Fed. 691. But where one knowingly and intentionally commits an act which has been made an offense, regardless of his

motive, knowledge or intent, his guilt is established although he may have been ignorant of some of the essential facts constituting the crime. Thus one who sells liquor to an unallotted Indian under charge of an agent or representative of the government is guilty of a violation of the law although he may have been ignorant of that fact, or indeed may have believed that the person to whom he made the sale was not an Indian but of some other nationality. U. S. v. Miller (D. C.) 105 Fed. 944. Again, guilty knowledge is not essential in a prosecution for the statutory offense of selling liquor to a minor. State v. Chastain, 19 Or. 176, 23 Pac. 963. Therefore, when one purchases from an Indian cattle which have been previously purchased by the government within the meaning of the act of Congress referred to, he violates the law, although he may not have known that the cattle were so purchased. The demurrer as to the first point is not well taken.

[2] But under the stipulated facts the defendant is not, in my opinion, guilty of the crime attempted to be charged against him. The statute under which he is being prosecuted is a part of the act of July 4, 1884, making an appropriation for the support and contingent expenses of the Indian Department. It provides that the President may use any sum appropriated for the subsistence of the Indians and not absolutely necessary for that purpose for the purchase of cattle for the benefit of the Indians for whom such appropriation is made. 23 St. at L. 97. Cattle purchased with money so appropriated are the property of the United States. They do not cease to be such because of their delivery to the Indians for a particular purpose and with a limited right of disposal thereof. It was to protect such property and to prevent the purchase thereof from the Indians without the consent of the government that the criminal provision of the statute was inserted.

[3] Where, however, cattle are purchased by an Indian with his own funds or by some officer of the government with funds belonging to him the law referred to can have no application, and was not so intended. The cattle in controversy here were bought with money paid for certain lands ceded by the Indians to the United States. They were therefore purchased with money which belonged to the Indians and not to the government. The Secretary of the Interior, in making the purchase, acted as the agent and representative of the Indians in the disbursement or expenditure of their money in pursuance of a contract with them authorizing him to do so. When the cattle were purchased and issued to the Indians, they became the property of the Indians and a purchaser thereof would not be liable criminally for a violation of the statute under which the present indictment was framed.

It follows that the demurrer should be overruled as to the first point, and sustained as to the second, and it is so ordered.